[Cite as *State v. Keeton*, 2011-Ohio-5812.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK   COUNTY

STATE OF OHIO                                :
                                             :      Appellate Case No. 2010-CA-24
        Plaintiff-Appellee                   :
                                             :      Trial Court Case No. 09-CR-869B
v.                                           :
                                             :
JONATHAN KEETON                              :      (Criminal Appeal from
                                             :       Common Pleas Court)
        Defendant-Appellant                  :
                                             :
                        . . . . . . . . . .

O P I N I O N

Rendered on the 10th day of November, 2011.

. . . . . . . . .

ANDREW R. PICEK, Atty. Reg. #0082121, Clark County Prosecutor's Office,
50 East Columbia Street, 4th Floor, Post Office Box 1608, Springfield, Ohio
45501
        Attorney for Plaintiff-Appellee

DON BREZINE, Atty. Reg. #0018477, Brezine Law Offices, 188 West Hebble
Avenue, Fairborn, Ohio 45324
        Attorney for Defendant-Appellant

. . . . . . . . .

HALL, J.

{¶ 1} Defendant-appellant Jonathan Keeton claims that defense counsel provided him ineffective assistance by failing to move for severance from his co-defendant, Keith Ramey, whose separate appeal we have already heard, see *State v. Ramey*, Clark App. No. 2010 CA 19, 2011-Ohio-1288. Keeton also claims that counsel's assistance was ineffective because counsel failed to cross examine witnesses adequately, failed to present a theory of defense, failed to move timely for separation of witnesses, and failed to object timely to jury instructions. We conclude that counsel did not provide Keeton ineffective assistance. Not moving for severance did not constitute deficient performance, and none of counsel's alleged trial failures prejudiced Keeton.

**I.**

{¶ 2} On October 13, 2009, Keeton and Ramey were jointly indicted on several felonies–two counts of aggravated robbery (deadly weapon and serious physical harm), two counts of felonious assault (deadly weapon and serious physical harm), and one count of breaking and entering. Attached to each of the robbery and assault counts was a firearm specification. A couple months later, on December 21, 2009, Keeton and Ramey were jointly indicted on one count of having a weapon while under disability.

{¶ 3} In our opinion deciding Ramey's appeal, we set out the following facts and procedural history:

{¶ 4} "{¶ 3} All of the charges against Ramey and Keeton stem from incidents which occurred on October 6, 2009, wherein the defendants were accused of breaking and entering into and stealing from 'Nasty N8's' tattoo parlor located at 805 East Main Street in Springfield, Ohio. The owner of the tattoo parlor reported that tattoo equipment, ink, a laptop computer, a printer, and cell phones were missing after the break-in.

{¶ 5} "{¶ 4} Ramey and Keeton were also accused of beating and robbing an individual named Howard Fannon. The robbery and assault of Fannon also occurred on October 6, 2009, shortly after Ramey and Keeton were alleged to have broken into the tattoo parlor. During the assault, Ramey allegedly shocked Fannon multiple times with a taser while Keeton hit him over the head with the butt of a handgun before they stole his watch and two gold necklaces. Fannon immediately called 911 to report the robbery, and Ramey was arrested a short time later at his home located at 106 N. Greenmount Avenue in Springfield, Ohio. Keeton was arrested the next day on October 7, 2009, at his father's house also located in Springfield. During the course of their investigations, Springfield police were able to recover almost all of the items alleged to have been stolen by Ramey and Keeton.

{¶ 6} "{¶ 5} At his arraignment on October 16, 2009, Ramey pled not guilty to the charges in the indictment. Ramey's bond was set at $50,000.00. Ramey did not post bond and, therefore, remained incarcerated pending trial. Keeton's bail was also set at $50,000.00 by the trial court, but he posted that amount on October 30, 2009, and was released from jail until the trial.

{¶ 7} "{¶ 6} * * * The case was [] reassigned to Judge Richard P. Carey of the Clark County Court of Common Pleas, Probate Division, on November 10, 2009.

{¶ 8} "{¶ 7} On December 10, 2009, co-defendant Keeton filed a motion to suppress physical evidence seized by police, as well as statements made by Keeton after his arrest. As previously stated, the State filed a second indictment on December 21, 2009, charging Ramey and Keeton with having a weapon while under disability. On December 29, 2009, Keeton filed a supplemental motion to suppress in which he argued that the photo lineups used by the police to identify him were inherently suggestive. A hearing was held on Keeton's motion to suppress on January 5, 2010. On January 6, 2010, the trial court issued a decision and entry overruling the motion to suppress in its entirety. The court also set a date for Ramey and Keeton's trial on February 1, 2010.

{¶ 9} "{¶ 8} On February 1, 2010, Ramey filed a motion to dismiss for violation of his right to a speedy trial. After a brief hearing during which the

court heard arguments from both parties, the court overruled Ramey's motion. The trial court also moved the trial date to February 2, 2010 * * *."

{¶ 10} After a three-day jury trial, where each was represented by separate counsel, Keeton and Ramey were found guilty of both aggravated robbery charges, one charge of felonious assault (deadly weapon), and the charge of having a weapon while under disability. They were found not guilty of the other two charges. The trial court sentenced Keeton to 13 years in prison.

{¶ 11} Keeton and Ramey appealed. We already considered Ramey's appeal;[1] now we consider Keeton's.

## II.

{¶ 12} Keeton's sole assignment of error claims that defense counsel rendered him ineffective assistance. To establish a claim for ineffective assistance of counsel a defendant must show two things: (1) "that counsel's performance was deficient," which requires the defendant to show that counsel made serious errors; and (2) "that the deficient performance prejudiced the defense," which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."*Strickland v. Washington*

---

[1] We reversed and vacated Ramey's weapons-under-disability conviction on speedy-trial grounds. In all other respects, we affirmed his conviction.

(1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674.

{¶ 13} The standard used to determine whether counsel's performance was deficient is that of "reasonably effective assistance." Id. at 687-688. "[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. The defendant specifically "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. at 690. "[A] court deciding an [] ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. * * * The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, * * * the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id.

{¶ 14} Yet "[e]ven if a defendant shows that particular errors of counsel were unreasonable * * *, the defendant must show that they actually had an adverse effect on the defense." Id. at 693. Showing merely that the errors "had some conceivable effect on the outcome" or "impaired the presentation of the defense" is not enough. Id. Rather, the defendant must show that there is a

reasonable probability–"a probability sufficient to undermine confidence in the outcome"–that, but for the errors, the outcome would have been different. Id. at 694. When it is his conviction that the defendant challenges, the reviewing court must determine "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695. Absent evidentiary challenges, the court "presume[s] * * * that the judge or jury acted according to law." Id. at 694. The court considers all the evidence presented and "ask[s] if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." Id. at 695-696.

{¶ 15} The reviewing court "need not [always] determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Id. at 697; *State v. Loza* (1994), 71 Ohio St.3d 61, 83 (citing *Strickland*). The court may dispose of an ineffectiveness claim solely based on the defendant's failure to show sufficient prejudice. Id.; *Loza*, at 83. A defendant fails to show prejudice when strong evidence of guilt was presented and counsel's alleged errors did not change the trial's result. See *State v. White*, 82 Ohio St.3d 16, 24, 1998-Ohio-363.

{¶ 16} Keeton points to several alleged failures by counsel that he argues constitute deficient performance that deprived him of a fair trial. We consider

counsel's alleged failure to move for severance first, then counsel's alleged trial failures.

{¶ 17} *Not moving to sever defendants*

{¶ 18} The issue here is whether counsel made a "serious error" by not moving to sever Keeton from Ramey, that is, whether it was objectively unreasonable for counsel not to do so.

{¶ 19} Keeton and Ramey were jointly indicted, see Crim.R. 8(B), and jointly indicted defendants are tried together unless the trial court severs them. See R.C. 2945.13. The court must sever them if joinder is prejudical. See Crim.R. 14. Concerning joinder of defendants under the federal joinder rule, Fed.R.Crim.P 14, the U.S. Supreme Court has said that properly joined defendants should be severed "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. U.S.* (1993), 506 U.S. 534, 539, 113 S.Ct. 933, 122 L.Ed.2d 317. Keeton fails to convince us that joinder prejudiced him in any of the three ways he cites.

{¶ 20} Keeton first says that joinder shortened the time that counsel had to prepare for trial. Keeton posted bond; Ramey did not. Consequently, under the speedy-trial statute, the state had 270 days after arrest to bring Keeton to trial but had to bring Ramey to trial within 90 days. See R.C. 2945.71(C)(2). Ramey and

Keeton were arrested within a day of each other. The trial actually began almost four months after their arrest. (This still complied with the speedy-trial statute because certain events tolled the 90-day time period for all but Ramey's weapons charge. See R.C. 2945.72.)

{¶ 21} Keeton cites no authority supporting the proposition that four months' preparation time is inherently prejudicial, and none of the things he cites suggests that counsel was unprepared. Rather, the record suggests just the opposite. On the eve of trial, during a conference with the trial judge, an attorney from counsel's office asked for a continuance due to the shortage of attorneys in the firm's office. (A case that the small firm expected to settle that week did not settle.) The defense attorney never suggested that counsel was unprepared. On the contrary, when the judge queried the attending attorney whether anyone in counsel's office was prepared to go forward with the trial, the attorney indicated that attorney Matt Barbato was prepared for trial. (Status Conf. Tr. 2-3).

{¶ 22} Keeton next says that joinder prejudiced him because he had to be tried before a probate-court judge. Keeton alleges that, because of the judge's lack of criminal-trial experience, when counsel failed to move for separation of witnesses the judge failed to separate the witnesses sua sponte, and failed to timely instruct the jury about a defendant's right not to testify. Hindsight cannot be the sole grounds for an ineffective assistance claim. Furthermore, nothing in

the record supports the defendant's argument of the trial court's inability or inadequacy.

{¶ 23} Finally, Keeton says that being tried with a black co-defendant prejudiced him. Keeton asserts in his brief that "[b]eing a Black Defendant in Clark County, Ohio almost definitely means you will be convicted; thus, it stands to reason that a White guy who is tried with a Black guy will also be convicted where it is depicted in the courtroom that the two are friends. Therefore, the White Defendant's only chance for a fair trial is to separate himself from the Black co-defendant."

{¶ 24} The state points out that the above assertion is demonstratively untrue: the jury found Ramey not guilty of two charges. Moreover there is simply no evidence in the record or elsewhere to support the defendant's argument.

{¶ 25} We note too that Ramey, in his appeal, also claimed ineffective assistance of (separate) counsel based on his counsel's not moving to sever him from Keeton, albeit for a different reason.[2] Rejecting the claim, we concluded that Ramey failed to show that counsel's moving for severance would have changed the trial's outcome. "The charges in both indictments involved Ramey and Keeton acting in concert with each other," we said. "There is nothing in the

---

[2] Ramey argued that he was prejudiced by the joinder because Keeton's motion to suppress extended the time that the state had to bring him to trial.

record which establishes that joinder of the defendants' case was prejudicial to either Ramey or Keeton." *Ramey*, at ¶61.

{¶ 26} We see nothing objectively unreasonable about counsel not moving to sever Keeton from Ramey. Counsel's performance in this respect was not deficient, so Keeton's ineffectiveness claim based on this conduct must fail.

{¶ 27} B. *Conduct during trial*

{¶ 28} Here we consider primarily whether the trial conduct that Keeton cites prejudiced him.

{¶ 29} Keeton says that counsel ineffectively cross examined certain witnesses by failing to pursue logical inconsistencies and questions of truthfulness raised by their testimony. But "decisions regarding cross-examination are within trial counsel's discretion and cannot form the basis for a claim of ineffective assistance of counsel."*State v. Nevins*, Montgomery App. No. 24070, 2011-Ohio-389, at ¶53 (defendant asserted that he was afforded ineffective assistance when his counsel failed to cross-examine a witness about a factual discrepancy between his testimony at the suppression hearing and his testimony at trial); see *State v. Dixon*, 101 Ohio St.3d 328, 2004-Ohio-1585, at ¶54 ("The extent and scope of cross-examination clearly fall within the ambit of trial strategy, and debatable trial tactics do not constitute lack of effective assistance of counsel.") (Citation omitted.). Moreover, Keeton fails to show that

effective cross examination would have changed the jury's verdict. Keeton also points to counsel's failure to timely object to jury instructions that did not include an instruction about his right not to testify in his own defense. But the jury did receive this instruction before it began deliberating. After counsel belatedly brought the issue to the court's attention, the court immediately instructed the jury. Since no evidence suggests that the jury did not follow this instruction, we presume that it did. And Keeton fails to show that, had the instruction been given earlier, the jury would have found him not guilty. See *State v. Payton* (1997), 124 Ohio App.3d 552, 561 (concluding the same where the defendant argued that counsel was ineffective for failing to request a jury instruction that the exercise of his Fifth Amendment privilege against self-incrimination must not be construed against him). Finally, Keeton says that counsel did not present a theory of the case and points to counsel's failure to timely move for separation of witnesses. Keeton fails to show that the jury likely would have found him not guilty had counsel's conduct in these two respects been different.

{¶ 30} Most of Keeton's assertions regarding counsel's trial conduct are broad and conclusory. Such assertions are insufficient to establish ineffective assistance of counsel. *State v. Jackson* (1980), 64 Ohio St.2d 107, 111. Ultimately, none of the cited conduct amounts to prejudicial error because the key evidence of Keeton's guilt was indisputable. We cited it in our opinion

deciding Ramey's appeal. Ramey challenged the sufficiency and manifest weight of the evidence supporting his convictions–which are the same as Keeton's convictions and based on much of the same evidence. Rejecting Ramey's evidentiary challenges, we cited the testimony of two eyewitnesses, whose testimony also implicated Keeton:

{¶ 31} "{¶ 70} After a thorough review of the record, we find that the State adduced sufficient evidence at trial to support Ramey's convictions for aggravated robbery and felonious assault. Daniel Miller and Amber Miller testified that they observed Ramey, *along with Keeton*, chase Fannon down. They also testified that Ramey was in possession of a taser, and *Keeton had a handgun*. Once Ramey caught up with Fannon, he stunned him repeatedly with a taser, and robbed him of his jewelry. Daniel Miller testified that during the assault he also *observed Keeton strike Fannon with the butt of the handgun*. * * * [T]here was sufficient evidence to find Ramey guilty of aggravated robbery with the firearm specification and felonious assault.

{¶ 32} "{¶ 71} Lastly, Ramey's conviction is also not against the manifest weight of the evidence. The credibility of the witnesses and the weight to be given their testimony are matters for the jury to resolve. Ramey testified on his own behalf, and he simply maintained that he approached Fannon on the street to ask him about food stamps he had allegedly stolen from Ramey. Ramey testified

that Fannon pulled out a knife and attacked him and Keeton. Ramey testified that he was simply defending himself from Fannon. The jury did not lose its way simply because it chose to believe the State's witnesses, namely Daniel Miller and Amber Miller, that Ramey and Keeton were the aggressors. Having reviewed the entire record, we cannot clearly find that the evidence weighs heavily against a conviction, or that a manifest miscarriage of justice has occurred." (Emphasis added.).

{¶ 33} Given the evidence, we conclude that, absent any of counsel's trial conduct cited by Keeton, there is no reasonable probability that the outcome of the trial would have differed. See *State v. Reynolds*, 148 Ohio App.3d 578, 2002-Ohio-3811, at ¶73 (concluding that defendant failed to show any prejudice resulting from counsel's decision not to move for an acquittal based on the court's earlier review of the defendant's challenges to the sufficiency and weight of the evidence where it found that "the evidence presented by the state was more than sufficient to sustain [the defendant's] conviction"). Because Keeton fails to show that any of counsel's trial conduct prejudiced him, his ineffectiveness claim based on the conduct must fail. Keeton fails to establish his claim that counsel rendered him ineffective assistance. Therefore his sole assignment of error is overruled.

{¶ 34} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN and FROELICH, JJ., concur.

Copies mailed to:

Andrew R. Picek
Don Brezine
Hon. Richard P. Carey